FREMONT FERRY AND BRIDGE COMPANY, PLAINTIFF IN
ERROR, v. HENRY FUHRMAN, DEFENDANT IN ERROR.

1.  **Bridges :** SUBSCRIPTION FOR ERECTION OF. A bridge company
    having the exclusive right to erect and maintain a toll bridge
    across the Platte river, for a distance of six miles near the town
    of Fremont, erected a bridge across the south channel of the
    river, which was destroyed about the 6th of March, 1876. The
    company then passed a resolution that in view of their indebt-
    edness, they would not rebuild unless aided by subscriptions.
    F. subscribed $100. Afterwards, on the 31st of March, 1876,
    the company changed the location of the bridge about one mile
    east of its former location, to which F. did not assent. *Held,*
    that the change being made without his assent he was not liable
    upon the subscription.,

2.  ———: ———. Where a corporation or person to whom a
    subscription runs has incurred obligations on the faith of such
    subscription, and has complied with the conditions on which it
    was made, the same may be enforced by suit.

ERROR from the district court of Dodge county. The facts appear in the opinion.

*W. A. Marlow*, for plaintiff in error.

The law is well settled that where advances have been made on the strength of a subscription, before notice of a withdrawal, a legal liability is incurred, and cannot be avoided, even though the promise to pay be not in writing. General Statutes, 393. *Johnson v. Wabash College*, 2 Indiana, 555. *McAuley v. Billenger*, 20 John., 89. 1 Parsons on Contracts, 453. *Harrison v. Rike*, 10 Indiana, 140. *Pierce v. Ruley*, 5 Indiana, 69. *Ohio Wesleyan Female College v. Love*, 16 Ohio St., 25. *Speery v. Johnson*, 11 Ohio, 452. *Parson v. Smith*, 46 Barb., 235. *McCoomack v. Reese*, 3 Green, Iowa, 591.

*N. H. Bell*, for defendant in error.

I. If Fuhrman intended a gift of one hundred dollars to the company, then his promise, such as it was, was without consideration, and the principles applicable to gifts *inter vivos* would govern. It is essential to a gift that it goes into effect at once, and completely. If it regards the future it is but a promise, and being a promise without consideration, it cannot be enforced and has no legal validity. 1 Parson Cont., p. 234. It makes no difference whether the offer to give was verbal or written. *Cotten v. Missing*, 1 Madd. Ch., 176. *Lyte v. Perry*, Dyer, 49 a. If Fuhrman's subscription was made and received as a gift, plaintiff cannot afterwards by alleging and proving some remote and speculative benefit received by the donor, recover on the subscription as a promise founded upon a consideration.

II. The right to build a bridge anywhere within a six mile limit, as given to the plaintiff by its charter,

does not prevent the company restricting itself to a given point within these limits, by contract with an individual, as the argument by counsel for plaintiff would seem to imply. As to effect of change of location, etc., on stock subscribers, see *Carlile v. T. H. Richmond R. R.*, 6 Ind., 316. *Macedon & Bristol Pl. R. Co. v. Lapham*, 18 Barb., 312. *Worcester Med. Inst. v. Bigelow*, 6 Gray, 498. *Manheim Plank R. Co. v. Arndt*, 41 Penn. State, 317. We conclude, then, that plaintiff never had cause of action against defendant, as stated in the petition, and that the testimony, although conflicting, establishes the fact that such contract as there was never was performed on the part of plaintiff.

MAXWELL, CH. J.

From the facts admitted in the pleadings, it appears that the plaintiff obtained a charter from the territorial legislature, by which it acquired the exclusive right to erect and maintain a wagon bridge across the Platte river, between certain designated points, extending along the river a distance of about six miles near the town of Fremont, in Dodge county; that after said charter was granted, Fremont precinct voted bonds to the amount of $50,000 for the purpose of erecting a wagon bridge within the boundaries named in said charter, and thereafter erected a wagon bridge across both the channels of said river, apparently with the consent of the plaintiff. Afterwards the bridge across the south channel of the river was destroyed, and was replaced by the plaintiff, and the tolls collected for crossing the bridge owned by the precinct, and that owned by the plaintiff, were divided with the precinct.

In March, 1876, the plaintiff's bridge across the south channel was destroyed, whereupon a meeting of the stockholders was held, at which the following resolution was adopted:

"*Resolved*, That in view of the indebtedness of the Ferry and Bridge Company, they will not build another bridge unless aided by donations from citizens."

Beneath this resolution the defendant signed his name as follows: "Henry Fuhrman 100."

The answer of the defendant admits he promised one hundred dollars to rebuild the bridge, but insists that after said promise was made the plaintiff removed its bridge to a point about one mile east of the former site, and then erected a bridge across the entire river and increased the rates of toll, etc. The case was tried to a jury in the court below, who found in favor of the defendant. Judgment having been rendered in favor of the defendant the plaintiff brings the cause into this court by petition in error. The errors assigned are:

*First.* That the verdict of the jury is not supported by the evidence and is contrary to law.

*Second.* That the court erred in overruling the motion for a new trial.

*Third.* That the verdict should have been in favor of the plaintiff and against the defendant.

*Fourth.* That the judgment should have been in favor of the plaintiff and against the defendant.

No exceptions are presented by the record. The only question to be considered is, whether there is sufficient testimony to sustain the verdict.

It appears that Fuhrman and Wilson were appointed a committee to solicit donations for the bridge and called upon a number of persons for that purpose. Mr. May testifies that at the time Fuhrman signed the resolution there was nothing said as to the location of the bridge. Mr. Shed testified, "I objected to giving anything because I thought they had spent enough on that bridge down there. I don't know who said it, whether Mr. Fuhrman or Wilson, but one of them said the bridge was to be built down here on this street at An-

derson's place." Mr. Wilson testified that Mr. Fuhr-
man said (to Mr. Shed), "We are going to move the
bridge down where Anderson's is." Mr. Pilsbury tes-
tified, "As near as I can remember the parties (Fuhr-
man and Wilson) said they did not care where the
bridge was built, so they could get over into Saunders
county." It also appears from the testimony that the
subscription of the defendant was made about the 6th
of March, 1876, and that the resolution relocating the
bridge was passed on the 31st of March of that year.

The defendant, called as a witness on his own be-
half, denies positively that he stated to Shed and Pils-
bury that the bridge was to be built at or near the
Anderson bridge; but says that he stated to them that
the bridge was to be replaced. As neither Mr. Pils-
bury nor Mr. Shed testify positively upon that point,
but merely state the facts to the best of their recollec-
tion, Fuhrman's testimony is at least of equal weight
with theirs. It also appears from the testimony that
lumber was ordered by an agent of the plaintiff from
Nye, Colson & Co. to rebuild the bridge at the former
site. A clear preponderance of the testimony shows
that at the time the defendant signed the resolution
promising to pay the sum of one hundred dollars, the
intention of the plaintiff was to rebuild the bridge
upon the site of the one destroyed. So far as appears
no action had been taken by the board of directors at
the time the defendant made the subscription, nor was
any proposition pending before them from which it
might be inferred that the location was to be changed.

While there is some conflict in the authorities, the
clear weight of authority seems to sustain the rule,
that where several promise to contribute to a common
object, desired by all, the promise of each is a good
consideration for the promise of the others and can be
enforced by suit, when the corporation or person to

whom the subscription runs has incurred obligations on the faith of such subscriptions, and has complied with the conditions upon which they were made. But a party may impose a condition upon his subscription. If the promise was to pay one hundred dollars to re-build the bridge at the place occupied by the former one, he would not be liable if the bridge was removed to another point without his consent, particularly if the distance was as great as in this instance. This question was submitted to the jury, and a finding had in conformity to the clear preponderance of the testimony. Had the company not selected a location and built a bridge prior to the time the plaintiff subscribed the paper in question, the position of the plaintiff would be tenable, but having selected a location, in the absence of any affirmative action on the part of the plaintiff, the presumption would be that the bridge would be rebuilt on the former site. This is not a case where an unqualified promise was made to contribute for a bridge at any point within the six miles. The judgment of the district court is clearly right and is affirmed.

JUDGMENT AFFIRMED.